**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PETRA O. SOTELO,
          Plaintiff,

v.                                                                                                         No. CV 10-0456 CG

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on *Plaintiff's Motion to Remand or Reverse Administrative Agency Decision* (Doc. 21) ('Motion'), filed on March 14, 2011.[1] The parties consented to have the undersigned magistrate judge conduct all proceedings and enter final judgment. (Docs. 5, 8). The Court has reviewed Plaintiff's Motion (Doc. 21), Brief (Doc. 17), *Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* ('Response') (Doc. 18), *Plaintiff's Reply to Defendant's Response [to] Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (Doc. 19) ('Reply'), and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire Administrative Record ('AR'). The Court finds that the Administrative Law Judge's

---

[1] On August 11, 2010, the Court ordered Plaintiff to file a motion to reverse or remand by October 11, 2010 (Doc. 13), and then, upon the request of the parties, extended that deadline to October 22, 2010 (Doc. 16). On October 22, 2010, Plaintiff filed *Plaintiff's Memorandum Brief in Support of Motion to Reverse or Remand Decision [sic] Administrative Agency Decision* (Doc. 17) ('Brief'), but did not file a motion. Defendant appears to have treated the Brief as a motion and filed his response to the Brief on December 20, 2010 (Doc. 18). Plaintiff filed a reply to her Brief on January 7, 2011 (Doc. 19). On March 14, 2011, Plaintiff filed her Motion, stating that she erred in not filing the Motion by October 22, 2010. Because the Motion does not set forth any information or arguments that were not already in the Brief, it appears that Defendant has not been harmed by Plaintiff's error of failing to timely file the Motion, and the Court will consider the Motion as having been timely filed.

failure to consider Plaintiff's Somatoform Disorder and Chronic Pain Syndrome in his credibility assessment of Plaintiff's subjective pain complaints requires the Court to **GRANT** Plaintiff's Motion and **REMAND** the case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

## I.    Procedural History

On May 22, 2007, Plaintiff filed applications for Social Security Disability Insurance Benefits and for Supplemental Security Income alleging that she became disabled on January 13, 2006.  AR at 113 and 118.  Plaintiff states that she is disabled due to a work-related accident that took place on January 11, 2006 which injured Plaintiff's back. (Doc. 17 at 2).  Plaintiff states that she "suffers from several severe physical impairments, as well as Depression/Anxiety, Chronic Pain Syndrome, and Somatoform Disorder.[2] (*Id.* at 1).  Plaintiff's applications were denied at the initial and reconsideration levels.  AR at 60-66 and 69-76, respectively.  Plaintiff requested a hearing and Administrative Law Judge (hereinafter 'ALJ') Ben Willner conducted a hearing on September 14, 2009.  *Id.* at 23-52, 77-78.  Plaintiff was present and testified at the hearing.  *Id.* at 2-42.  Plaintiff was represented by an attorney at the hearing.  *Id.* at 1.  A vocational expert ('VE') also testified at the hearing.  *Id.* at 42-51.  On November 2, 2009, the ALJ issued a decision denying Plaintiff's applications and finding that Plaintiff is not disabled within the meaning of the Social Security Act.  *Id.* at 5-22.  Plaintiff requested that the Appeals Council review the

---

[2] "The common feature of the Somatoform Disorders is the presence of physical symptoms that suggest a general medical condition . . . and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder . . . ."  *See* Diagnostic & Statistical Manual of Mental Disorders at 485 (4th ed. American Psychiatric Society, 2000) ('DSM').

2

ALJ's decision and, on March 22, 2010, the Appeals Council issued its decision declining review of the ALJ's decision, making that decision the final decision of the Commissioner. *Id.* at 1-4. On May 12, 2010, Plaintiff filed her complaint in this action. (*See* Doc. 1).

## II.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257,

1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; or (4) he is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

that the claimant is able to perform other work in the national economy, considering his residual functional capacity (RFC), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV. **Plaintiff's Age, Education, Work Experience, Medical History; and the ALJ's Decision**

Plaintiff is 48 years old and asserts that she is disabled due to pain in her back, tail bone, left leg and left eye, and that she suffers from memory loss. AR at 137. Plaintiff states that she was in a work-related accident on January 11, 2006, in which she injured her back. *Id.* at 239. Plaintiff testified at her hearing before the ALJ that she has an eighth-grade education obtained in Mexico and that she can read English, but cannot write in English. *Id.* at 29-30. Plaintiff also testified at her hearing that her mental problems started when her grandchildren died during a fire in a trailer February 12, 2007. *Id.* at 38-39. Plaintiff stated that she had nightmares and trouble sleeping, and that she experienced some hallucinations. *Id.* at 39-40. Plaintiff has past work experience as a housekeeper and laundry worker. *Id.* at 20. Plaintiff's medical records document treatment from: Henry Chiropractic and Wellness Center (*id.* at 211-218); Carlsbad Mental Health Association (*id.* at 222-224, 309-314, 323-328); Industrial Rehabilitation Clinics, P.C. (*id.* at 227-234, 237-240, 249-254, 330-371); Center for Ambulatory Surgery and Endoscopy (*id.* at 235-236); and Carlsbad Family Health/Presbyterian Medical Services (*id.* at 241-248). Plaintiff's medical records include: a consultative examination by Sambaiah Kankanala, M.D. on August 16, 2007 (*id.* at 256-258); a Physical Residual Functional Capacity Assessment by Mark A. Warner, M.D. on August 29, 2007 (*id.* at 259-267); a Disability Determination Examination/Mental Status Evaluation by Carl Adams, Ph.D. on

August 29, 2007 (*id.* at 268-271); a Mental Residual Functional Capacity Assessment by J. LeRoy Gabaldon, Ph.D. on September 19, 2007 (*id.* at 272-290), with an addendum by Elizabeth Chiang, M.D. on February 7, 2008 (*id.* at 315-317), and a second addendum by N. D. Nickerson, M.D. on February 8, 2008 (*id.* at 318); a Psychiatric Evaluation by Ronald Haugen, CNS on August 2, 2007 (*id.* at 300-302); and Individual Progress Notes by Ronald Haugen from August 17, 2007 to August 8, 2007 (*id.* at 303-308).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since January 13, 2006, the alleged onset date of her disability.  AR at 13.  At step two, the ALJ found that Plaintiff's "degenerative disc disease of the lumbar spine; depression/anxiety; substance abuse (in reported remission); diabetes (by history); and gastritis" are severe.  *Id.*  At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the listings of impairments found in 20 C.F.R. § 404, subpt. P, App. 1.  *Id.*  The ALJ stated that Plaintiff's degenerative disc disease of the lumbar spine does not meet or equal the severity criteria of Section 1.04A because of lack of evidence of: "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory of reflex loss and, i[f] there is involvement of the lower back, positive straight leg raising test (sitting and supine)."  *Id.* at 14.  The ALJ stated that Plaintiff's gastritis does not meet or equal Sections 5.02 and 5.05A because "[t]here is no evidence of hemorrhaging from gastric varices."  *Id.*  The ALJ further stated that Plaintiff's depression/anxiety mental impairments do not meet or equal the criteria of listings 12.04

and 12.06 because, in considering the paragraph B criteria, Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." *Id.* The ALJ also stated that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.*

At step four, the ALJ determined that Plaintiff has the RFC to perform light work and "is limited to unskilled work involving simple tasks, and work which does not require the ability to write more than minimally in the English language." *Id.* at 14-15. The ALJ stated that he concurred with the State agency medical consultants who determined that Plaintiff had mild limitations in activities of daily living and social functioning, and moderate difficulties with regard to concentration, persistence or pace, and had no episodes of decompensation. *Id.* at 18. The ALJ also discussed the weight he accorded Plaintiff's treating and consultative physicians. *Id.* at 20. The ALJ found that Plaintiff is unable to perform any past relevant work, so he proceeded to step five of the sequential evaluation.

At the fifth and final step, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she could perform. *Id.* at 20. The ALJ stated that Plaintiff's ability to perform all or substantially all of the requirements of light-level work was impeded by limitations, so he asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. *Id.* at 20-21. The ALJ stated that the VE "testified that given all of these factors [Plaintiff] would be able to perform the requirements of representative occupations such as . . . laundry folder . . .; food assembler . . .; and an assembler." *Id.* at 20. The ALJ stated that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* In addition, the ALJ

stated that because he found that Plaintiff was not disabled even taking into account the effect of her alcohol and cocaine abuse, he does not reach the issue of whether that abuse is a contributing factor material to the determination of Plaintiff's disability. *Id.* In conclusion, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and is not disabled under the Social Security Act and Regulations. *Id.*

### V.     Analysis

Plaintiff contends that the ALJ's decision should be remanded for two reasons: First, because the ALJ failed to consider Plaintiff's Somatoform Disorder and Chronic Pain Syndrome as severe impairments at step two, and second, because the ALJ failed to consider Plaintiff's Somatoform Disorder and Chronic Pain Syndrome in determining her credibility regarding her subjective complaints of pain. (Doc. 17 at 6-9). As relief, Plaintiff asks the Court to reverse the ALJ's decision or, alternatively, to remand the case for a new hearing before an ALJ. (*Id.* at 10). Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because it is based on substantial evidence. Response (Doc. 18 at 4-14).

### A.     The ALJ's Consideration of Plaintiff's Somatoform Disorder and Chronic Pain Syndrome at Step Two

Plaintiff contends that the ALJ incorrectly failed to find that Plaintiff's Somatoform Disorder and Chronic Pain Syndrome are severe impairments at step two, despite evidence to the contrary. (Doc. 17 at 6). Specifically, Plaintiff relies on evidence in the record that: (1) Dr. Balkman "continually prescribed the Plaintiff Vicodin from March 9, 2007 through

June 24, 2009 to treat her for Chronic Pain Syndrome;"[4] (2) Dr. Gabaldon noted in the Psychiatric Review Technique Form "that the Somatoform Disorder resulted in persistent disturbance of sensation and that it caused moderate difficulties in concentration, persistence, and pace;" and (3) the consultative examiner, Dr. Adams, confirmed Plaintiff's somatoform disorder "and indicated that it would cause the Plaintiff moderate difficulties in concentration and task performance." *Id.* (citing AR at 227, 332, 283 and 270). Plaintiff states that the ALJ's failure to consider Plaintiff's diagnosis of Somatoform Disorder and Chronic Pain Syndrome at step two resulted in his failure to consider it at steps three, four and five, and in his determination of Plaintiff's credibility, and that his findings at step two are contrary to the substantial evidence that was before him. (Doc. 17 at 6).

In response, Defendant first contends that any error by the ALJ in evaluating Plaintiff's severe impairments at step two is harmless because he proceeded past Step Two of the sequential evaluation process. Response (Doc. 18 at 4-5) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) and *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)). Defendant argues in the alternative that the evidence upon which Plaintiff relies does not show that Plaintiff's medical providers considered that psychological factors had a role in the severity of Plaintiff's pain. Response (Doc. 18 at 5-8). Defendant further contends that the ALJ properly included in his decision the limitations on Plaintiff's abilities found in both Dr. Gabaldon's and Dr. Adams' opinions. (*Id.* at 7-8).

---

[4]Plaintiff states in her Reply (Doc. 19) at 1 that Dr. Reeve "created the treatment note of March 9, 2007," not Dr. Balkman (citing AR at 227), and that "Barnie Rodriguez P.A. was primarily responsible for Plaintiff's treatment from the date of Dr. Reeve's last treatment note through the end of June 24, 2009" (citing AR at 332).

The Court finds that the fact that the ALJ did not find Plaintiff's Somatoform Disorder and Chronic Pain Syndrome severe at step two is, at the most, a harmless error. While a claimant must make only a *de minimis* showing for her claim to advance beyond step two of sequential analysis, the ALJ need not consider whether the "impairments, if considered separately, would be of sufficient severity to survive step two." *See Carpenter*, 537 F.3d at 1266 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004)). An error at step two in considering a claimant's impairments is rendered harmless if the ALJ concludes that the claimant cannot be denied benefits conclusively at step two and proceeds to the next step of the sequential evaluation. *Carpenter*, 537 F.3d at 1266. Because the ALJ here found that Plaintiff has several severe impairments at step two and then proceeded in the sequential analysis, the ALJ did not err in failing to find that Plaintiff's Somatoform Disorder and Chronic Pain Syndrome were severe at step two, and Plaintiff's argument to the contrary fails.

### B.   The ALJ's Consideration of Plaintiff's Somatoform Disorder and Chronic Pain Syndrome in Determining her Credibility

Plaintiff next contends that the ALJ erred by failing to consider Plaintiff's Somatoform Disorder and Chronic Pain Syndrome in his consideration of her credibility regarding her subjective complaints of pain. (Doc. 17 at 7-9). Specifically, Plaintiff states that the ALJ failed to follow the framework in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) because he failed to consider Plaintiff's Somatoform Disorder and Chronic Pain Syndrome "as pain-producing impairments independent of Degenerative Disc Disease of the Lumbar Spine" and, therefore, "failed to make a finding as to their impact on the credibility of her pain testimony." (*Id.* at 8). Plaintiff also contends that the ALJ should have given her pain

testimony great weight because of her Somatoform Disorder and Chronic Pain Syndrome. (*Id.* at 9).

In response, Defendant states that the ALJ properly determined Plaintiff's credibility regarding her statements about the intensity, persistence, and limiting effects of her symptoms. Response (Doc. 18 at 8-14). Defendant states that despite Plaintiff having been diagnosed with "Chronic Pain Disorder," the record contains no evidence indicating that Plaintiff's mental impairments had a role in the severity of Plaintiff's pain complaints, that they were pain-producing, or that they caused her to have a heightened sensitivity to pain. (*Id.* at 13). Defendant further states that the ALJ properly accounted for the limitations found by Plaintiff's doctors regarding her mental impairments when he limited Plaintiff to unskilled work involving simple tasks. (*Id.*). Defendant contends that the ALJ followed the *Luna* framework when "he recognized that Plaintiff had at least one pain-producing impairment," and then determined the extent to which Plaintiff's symptoms were credible. (*Id.* at 14).

In evaluating the credibility of a claimant's subjective complaints of pain, the ALJ follows the steps outlined in *Luna*. First, accepting as true the subjective allegations of pain, the ALJ must determine whether the claimant has a medically determinable impairment that "could reasonably be expected to produce the alleged pain." *Luna*, 834 F.2d at 163. "If an appropriate nexus does exist," the ALJ must next consider all of the relevant evidence "to determine whether the claimant's pain is in fact disabling." *Id.* The ALJ must consider "the medical data previously presented, any other objective indications of the degree of pain, and subjective accounts of the severity" of pain in determining whether the ALJ believes the claimant. *Id.* "Credibility determinations are peculiarly the

11

province of the [ALJ, and courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). "[I]t is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Credibility findings, therefore, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

In making his RFC determination, the ALJ here found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are credible to the extent they are consistent with the above residual functional capacity assessment." AR at 15. The ALJ stated that he considered the State agency medical consultants' opinions, the opinions of Dr. Reeve, and the medical evidence from Carlsbad Mental Health Associates. *Id.* at 19. The ALJ found that Plaintiff "described daily activities which are not limited to the extent one would expect[], given the complaints of disabling symptoms and limitations," and noted that Plaintiff indicated she could "prepare meals, wash dishes, do the laundry, drive, and go shopping." *Id.* The ALJ also found that the evidence does not support the GAF scores Plaintiff received at Carlsbad Mental Health Associates and from Dr. Adams because the "GAFs were based on subjective reports of symptoms and limitations provided by the claimant," and notes that Dr. Adams "indicated significant symptom magnification noted regarding [Plaintiff's] pain and limitations. *Id.*

The Tenth Circuit has held that an ALJ must consider the possible effect of a diagnosis of somatoform disorder on the credibility of a claimant's pain testimony. *See Tolbert v. Chater*, 107 F.3d 21, *1-3 (10th Cir. 1997) (unpublished) (remanding to ALJ to

12

consider the possible effect of the claimant's diagnosis of somatoform pain disorder on the credibility of her testimony), and *Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (holding that the ALJ must consider whether the claimant's diagnosis of somatoform disorder affected the claimant's perception of pain). The Court rejects Defendant's argument that the ALJ was not required to consider the effect of Plaintiff's Somatoform Disorder and Chronic Pain Syndrome on her credibility because none of Plaintiff's doctors stated that they considered Plaintiff's mental impairments as pain-producing. Defendant does not cite to any authority for this argument, and cases discussing this issue do not require that claimants show that their mental impairments are pain-producing. *See Winfrey*, 92 F.3d 15 1020 (holding that the claimant properly established the existence of a pain-producing impairment with evidence of degenerative changes and osteoarthritis of the spine, and that the ALJ was then required to consider the claimant's diagnosis of somatoform disorder, even though the somatoform disorder was not diagnosed as a pain-producing impairment). The ALJ is required to consider "the possibility that psychological disorders combine with physical problems" when evaluating allegations of pain, and the ALJ failed to do so here. *Luna*, 834 F.2d at 165-66. The Court finds that the ALJ's failure to explain why he did not consider Plaintiff's diagnosis of Somatoform Disorder and Chronic Pain Syndrome "infected his evaluation of [the claimant's] subjective complaints of pain and, therefore, his evaluation of her credibility." The Court, therefore, will remand for the ALJ to consider the possible effect of Plaintiff's Somatoform Disorder and Chronic Pain Syndrome on her credibility regarding her pain testimony.

**V.** **Conclusion**

In Conclusion, the Court **FINDS** that the ALJ did not err in failing to find that Plaintiff's Somatoform Disorder and Chronic Pain Syndrome were not severe at step two, and that the ALJ erred in failing to consider the possible effect of Plaintiff's Somatoform Disorder and Chronic Pain Syndrome on Plaintiff's credibility regarding her pain testimony.

**IT IS HEREBY ORDERED THAT** *Plaintiff's Motion to Remand or Reverse Administrative Agency Decision* (Doc. 21) is **GRANTED** and this case shall be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent